**Fabian ELISEA, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 41A04–0206–CR–257.

Court of Appeals of Indiana.

Oct. 22, 2002.

John B. Norris, Hass Vandivier & Norris, Franklin, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Fabian Elisea appeals his convictions following a bench trial of cruelty to an animal[1] as a Class A misdemeanor and practicing veterinary medicine without a license,[2] a Class B misdemeanor. He presents the following issues for our review:

I. Whether sufficient evidence was presented to sustain the convictions.

II. Whether he received effective assistance of trial counsel.

III. Whether the trial court improperly sentenced him.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict reveal that on May 8, 2001, Shawn and William Stratton had twelve pit bull puppies. The Strattons learned that Elisea performed ear croppings on dogs and hired him to crop the ears on two of the puppies at their home. Elisea purchased three of the puppies from the Strattons during his visit to perform the ear croppings. During the procedure, Elisea had an assistant bind the dogs' legs and mouths with tape. Once immobilized, Elisea marked a line along each ear with an eyeliner pencil and, after numbing the ears with ice, but without any anesthetic, cut the dogs' ears with a pair of office scissors. Vaseline and Bactine were placed on each cut, and Elisea told Shawn to keep the puppies outside in the cold because their ears would heal more quickly.

In response to an anonymous phone call about neglected puppies, Johnson County Animal Control went to the Stratton home on May 10, 2001 to investigate. Assistant Warden Michelle Gilbert saw that the two puppies had "no ears at all" and "were covered in blood." *Transcript* at 12. The ears were not wrapped or sutured and appeared to be swollen and infected. Additionally, Gilbert noticed that the puppies were feverish and sluggish. Gilbert requested permission to take the puppies to a veterinarian, but Shawn refused. Following the visit from Animal Control, the Strattons took the puppies to a veterinarian, who prescribed an antibiotic pill and ointment for the badly infected ears. The veterinarian opined that the procedure performed by Elisea was quite inappropriate.

On May 11, 2001, Animal Control officers executed a search warrant at the Stratton home and took the puppies into their care. The State subsequently charged Elisea with one count each of cruelty to an animal and practicing veteri-

1. *See* IC 35–46–3–12(a).

2. *See* IC 15–5–1.1–34.

nary medicine without a license. After being found guilty of the crimes, the trial court sentenced Elisea to a one-year executed jail sentence. He now appeals.

## DISCUSSION AND DECISION

 Elisea first contends that the State presented insufficient evidence to sustain both of his convictions. In reviewing a claim of insufficiency of the evidence, the court on appeal may not reweigh the evidence or assess the credibility of witnesses. *Bennett v. State*, 705 N.E.2d 176, 178 (Ind.1998); *Wisneskey v. State*, 736 N.E.2d 763, 764 (Ind.Ct.App.2000). If after considering the reasonable inferences and the evidence supporting the judgment, we conclude that a reasonable fact finder could find each element of the crime beyond a reasonable doubt, we will affirm the conviction. *Bennett*, 705 N.E.2d at 178.

 In this case, to convict Elisea of cruelty to an animal, the State was required to prove that Elisea knowingly or intentionally tortured, beat, or mutilated a vertebrate animal resulting in serious injury or death to the animal. IC 35–46–3–12(a). Subsection (b)(2) provides that it is a defense if the defendant "engaged in a reasonable and recognized act of training, handling, or disciplining the vertebrate animal." Elisea maintains that the evidence is insufficient to support the conviction for cruelty to an animal because the State failed to present sufficient evidence to rebut and overcome his defense that he engaged in a reasonable and recognized act of handling the puppies. We disagree.

The legislature has not defined torturing, beating, or mutilating an animal. Therefore, we must give the statutory language its plain, ordinary, and usual meaning. *Downey v. State*, 726 N.E.2d 794, 797 (Ind.Ct.App.2000). Because there is no evidence that Elisea beat the puppies, we examine the plain and ordinary meaning of the terms "torture" and "mutilate." The dictionary meaning of the word "torture" is "to cause intense suffering [or] subject to severe pain." *Webster's Third New International Dictionary Unabridged* 2414 (1967). "Mutilate" means "to cut off or permanently destroy ... an essential part of a body" and "to cut up or alter radically so as to make imperfect." *Id.* at 1493.

Here, there is no question that cutting off the ears of the puppies was severely painful. Veterinarian Edward O'Connor testified that cutting the ears of the puppies without anesthesia would have "hurt like heck for a short period of time [and] there is going to be some long term pain associated with it." *Transcript* at 88. He later explained that there would be both acute pain and chronic pain associated with cutting the puppies' ears without anesthesia:

> [F]irst of all the initial pain is acute pain.... They are going to scream or cry. They are going to wiggle. The first response is escape.... It hurts. It hurts a lot for a short period of time. That is acute pain. So, in the very beginning there could be some screaming or some whining and wiggling and trying to get away.

*Transcript* at 94. Following this, the veterinarian testified that chronic pain would develop and would last "quite awhile for several days." *Transcript* at 94–95. The puppies would be rubbing and pawing at their ears and rolling around because of the pain. Additionally, Dr. O'Connor opined that there would be a physiological response, which would entail an accelerated heart rate, higher blood pressure, and the release of certain compounds in the puppies' systems. *Transcript* at 94.

Finally, despite Elisea's argument to the contrary, the evidence presented by the State was sufficient to overcome his de-

fense that he engaged in a reasonable and recognized act of handling the puppies. Dr. O'Connor testified that the procedure employed by Elisea was "[m]ost inappropriate." *Transcript* at 88. He explained that the puppies should have been anesthetized to alleviate most of the pain and that the cuttings should have been sutured to avoid scarring, promote healing, and prevent infection. *Transcript* at 88–89. Given the foregoing evidence, the trial court could have reasonably inferred that Elisea committed the crime of cruelty to an animal. We find no error.

Elisea also argues that the evidence is insufficient to establish that he practiced veterinary medicine without a license. He contends that the State presented no evidence to establish that ear cropping constitutes a practice limited strictly to the field of veterinary medicine, which requires possession of a license to perform. Elisea maintains that owners of domesticated animals should not be unduly burdened by requiring them to take their animals to a veterinarian for ear cropping. Again, we cannot agree.

IC 15–5–1.1–34(1) provides that "[a] person who knowingly . . . practices veterinary medicine in this state without a license or special permit to practice veterinary medicine issued by the board" commits a Class B misdemeanor. Pursuant to IC 15–5–1.1–2, the practice of veterinary medicine is defined as:

\* \* \*

(2) accepting remuneration for doing any of the things described in subdivisions (3) through (6);

\* \* \*

(4) prescribing a drug, medicine, appliance or application, or treatment of whatever nature for the prevention, cure, or relief of bodily injury or disease of animals;

(5) performing a surgical or dental operation upon an animal; or

(6) administering a drug, medicine, appliance, application, or treatment of whatever nature for the prevention, cure, or relief of a wound, fracture, or bodily injury or disease of animals, except where such drug, medicine, appliance, application, or treatment is administered at the direction and under the direct supervision of a veterinarian licensed under this chapter.

■ Here, the evidence presented at trial by the State revealed that Elisea cut off the puppies' ears in exchange for $75 from the Strattons. Despite Elisea's argument to the contrary, the State proved that Elisea engaged in the practice of veterinary medicine as this term is statutorily defined. Dr. O'Connor described the surgical operation that typically occurs to crop a dog's ears. *Transcript* at 83–85. Elisea's act of cutting the puppies' ears was a surgical procedure for which he accepted money. Further, he administered Bactine, treated the ears with Vaseline, and bandaged the ears. He also told the Strattons to keep the ears wrapped and to wash them twice daily. Based upon this evidence, the trial court could have reasonably inferred that Elisea practiced veterinary medicine without a license. The evidence set forth above is sufficient to support the conviction.

Elisea next contends that he received ineffective assistance of trial counsel. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Monegan v. State*, 721 N.E.2d 243, 250 (Ind.1999). To make a successful ineffective assistance claim, a petitioner must establish both deficient performance and resulting prejudice according to the two-part test announced in *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind.2000).

First, the petitioner must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.; Thompson v. State,* 671 N.E.2d 1165, 1168 (Ind.1996). We presume counsel's performance was not deficient absent convincing evidence to the contrary. *Winters v. State,* 698 N.E.2d 1197, 1198 (Ind.Ct.App. 1998), *trans. denied.* The petitioner must secondly prove that counsel's substandard performance was so prejudicial that he was deprived of a fair trial. *Thompson,* 671 N.E.2d at 1168. In determining whether the defendant was prejudiced, we look to the totality of the evidence and ask whether there is a reasonable probability that the outcome would have been different but for counsel's errors. *Wine v. State,* 637 N.E.2d 1369, 1378 (Ind.Ct.App.1994), *trans. denied.* A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* The concept of prejudice has been further defined as whether counsel's deficient performance rendered the trial result unreliable or the proceeding fundamentally unfair. *Rondon v. State,* 711 N.E.2d 506, 517 (Ind.1999) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180, 191 (1993)).

■ Elisea initially claims that his trial counsel was deficient in failing to present evidence beyond his own testimony to support the defense position that ear cropping by owners, breeders, and kennel operators is a recognized practice. Yet, he does not demonstrate why trial counsel's performance was deficient or how he was prejudiced. On appeal, we do not second guess counsel's strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests. *State v. Moore,* 678 N.E.2d 1258 (Ind.1997), *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 678 (1998). We presume that counsel was competent, and this presumption is rebutted only with strong and convincing evidence. *Hendrickson v. State,* 660 N.E.2d 1068, 1072 (Ind.Ct.App.1996), *trans. denied.* We cannot say that counsel's decision not to call other witnesses was not simply a strategic decision made in the exercise of reasonable professional judgment. Elisea thus has not rebutted the presumption of competency nor has he established that the ultimate result was fundamentally unfair or unreliable. His claim of ineffective assistance of counsel therefore must fail.

■ Elisea also maintains that his trial counsel was ineffective for failing to inquire as to whether the trial court had reviewed, considered, or weighed letters placed in the trial court's file that were received from the public and requested that he received an executed sentence. However, even assuming the trial court erred by reading the letters, Elisea fails to demonstrate any actual bias or prejudice against him on the part of the trial court. *See Timberlake v. State,* 753 N.E.2d 591, 610 (Ind.2001); *Fry v. State,* 521 N.E.2d 1302, 1305 (Ind.1988) (the law presumes a judge is unbiased and unprejudiced in matters presented to the court). There is no indication from the record before us that the trial court was prejudiced against Elisea. Bias and prejudice cannot be inferred merely from the trial court sentencing Elisea to an executed sentence. Because no judicial bias exists, Elisea's claim that he received ineffective assistance based upon this ground must also fail.

■ Elisea finally argues that an executed sentence is manifestly unreasonable given the nature of the offenses, his character, and lack of criminal history. Sen-

tencing decisions are entrusted to the sound discretion of the trial court, are given great deference, and will only be reversed for abuse of discretion. *Blanche v. State*, 690 N.E.2d 709, 714 (Ind.1998). This court is endowed by our state constitution with the authority to review and revise sentences. IND. CONST. art. VII, § 6. That authority is currently governed by Indiana Appellate Rule 7(B),[3] which provides: "The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender."

We have traditionally been reluctant to modify a sentence on appeal, provided it falls within the statutory boundaries and there is no clear evidence of abuse. *Hardebeck v. State*, 656 N.E.2d 486, 490 (Ind. Ct.App.1995). In addressing Elisea's argument that his sentence is manifestly unreasonable, we note that a one-year executed sentence is authorized by statute for the crimes of cruelty to an animal and practicing veterinary medicine without a license. Furthermore, given the evidence presented, we cannot say that this sentence was clearly, plainly, and obviously unreasonable. We see nothing in the character of this offense or this offender that suggests that this sentence is too harsh for the crimes committed. Accordingly, we cannot say that the sentence was manifestly unreasonable.

Affirmed.

BROOK, C.J. and DARDEN, J., concur.

---

3. Our supreme court has amended Indiana Appellate Rule 7(B) and effective January 1, 2003, the rule provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."