**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL SAKHA, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-PC-425 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary L. Miller, Judge
The Honorable Christina Klineman, Master Commissioner
Cause No. 49G05-9609-PC-147351

**January 24, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Petitioner, Michael Sakha (Sakha), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

ISSUE

Sakha raises one issue, which we restate as: Whether the post-conviction court erred in denying his petition.

FACTS AND PROCEDURAL HISTORY

The facts of this case were set forth as follows in Sakha's prior appeal:

On September 20, 1996, at approximately 9:30 p.m., Joel Goode was in the process of depositing money in an ATM in Indianapolis when Sakha approached him, placed a gun to his back, and demanded all of the money in his bank account. Although Goode attempted to comply with Sakha's demand, the ATM would not permit Goode to perform another transaction. As a result, Sakha demanded that Goode drive him around town and withdraw all of his money from other ATM's. Goode refused and began to walk away. Sakha then told Goode that he was going to "blow [his] brains out." After a brief struggle, Sakha shot Goode in the neck and fled. The shot was photographed by the ATM's camera.

Goode's injuries have left him paralyzed from the chest down. Goode has incurred substantial medical bills and undergone several surgeries. As a result of the incident, Sakha was charged [on September 27, 1996] with attempted murder, a class A felony, attempted robbery, a class A felony, and carrying a handgun without a license, a class A misdemeanor.

*Sakha v. State*, 49A05-0702-PC-88, slip op. at *1 (Ind. Ct. App. Oct. 31, 2007) (internal references omitted.

In August of 1997, almost a year after being charged with these offenses, Sakha agreed to plead guilty as charged with open sentencing and concurrent sentences. The trial court conducted the guilty plea hearing on August 20, 1997. At the hearing, Sakha stated

2

that he understood the terms of the plea agreement and the sentencing parameters. He also stated that he understood that he was waiving specifically enumerated constitutional rights and agreed to the factual basis set forth by the State. The trial court accepted Sakha's guilty plea after determining that it was voluntarily made.

Thereafter, Sakha's attorney obtained and reviewed Sakha's medical records and interviewed the physician who treated Sakha for depression the month before he committed the offenses. Defense counsel also talked to Sakha and his family, ordered a substance abuse evaluation, and hired sentencing consultant Steven Brock to evaluate Sakha and provide information to the trial court on Sakha's "particular strengths and weaknesses relevant to sentencing." (Brock's Memorandum, p. 1). The sentencing memorandum and substance abuse evaluation both stated that Sakha had a dysfunctional childhood and had recently been diagnosed with major depression and polysubstance abuse.

At the September 24, 1997 sentencing hearing, Sakha's father and sister testified that Sakha began abusing drugs after he suffered a football injury at the beginning of his junior year in high school. Neither family member expressed concern about Sakha's competence. At the conclusion of the hearing, Sakha gave the following statement:

> I want to apologize to . . . Joel Goode for everything that's happened because that wasn't my intention for this to happen to him. . . . I understand how this all happened now. You know, I had problems at home. . . . I made good grades. I was in sports and I had a job, tried to be a good role model. Well, that all changed when I had my football injury. That's when I basically lost my outlook out of my abusive home life. . . . It changed and so I turned to drugs because I lost the outlook. I needed a way to get away from it all. . . . I realize all of it now and I will take responsibility for my actions, but I believe I can still add positive things to society. No matter how much time I get, I will always strive to be a better person and make up for what happened. Thank you, sir.

(Index of Exhibits, p. 122).

Following Sakha's statement, the trial court sentenced him to fifty years for attempted murder as a Class A felony, fifty years for attempted robbery as a Class A felony, and one year for carrying a handgun without a license as a Class A misdemeanor. The trial court ordered all sentences to run concurrently to each other for a total executed sentence of fifty years.

In 2007, this court affirmed the trial court's denial of Sakha's motion for a belated appeal. *See Sakha*, slip op. at *3. On May 27, 2008, Sakha filed a petition for post-conviction relief, which he amended on July 31, 2008, and again on April 23, 2012. The sole issue alleged in the amended petition was whether trial counsel was ineffective for failing to adequately investigate Sakha's competency at sentencing.

The post-conviction court held a hearing on the petition on June 13, 2012. Psychologist John Ehrman (Dr. Ehrman) testified that he reviewed Sakha's case and interviewed him in March of 2010. Dr. Ehrman, who has conducted five or six competency evaluations in thirty-five years of practice, hypothesized that, based on this review and interview, he "suspected" that Sakha was not competent at the time of the sentencing hearing. (Transcript p. 16). Dr. Ehrman also admitted that he could be wrong because he was not at the sentencing hearing that occurred thirteen years prior to his interview with Sakha. In addition, Sakha's sisters testified about Sakha's high school football injury and the changes in Sakha that occurred after the injury. Younger sister Victoria Dickerson (Dickerson) testified that on the day he was sentenced, Sakha "didn't seem like he really

4

could grasp the fact that he could be spending a huge remainder of his life in jail." (Tr. p. 43). Sister Sarah Cross (Cross) testified that Sakha was in a daze at the sentencing hearing. Specifically, according to Cross, Sakha was "sitting there with this little weird smile on his face." (Tr. p. 54). Sakha testified that he had only a vague recollection of the sentencing proceeding.

Sakha's trial counsel, Arnold Baratz (Baratz), testified by deposition as follows:

> [Sakha] was competent and didn't seem to have any problems regarding competency. And in talking with his family, his friends, teachers at school, coaches, all kind of people, there didn't seem to be anything in his history to indicate that he had any mental health issues. The depression was just diagnosed pretty close to the time of the commission of the crime, and appeared to have been more situational, based on things that were happening in his life, and not necessarily the result of a mental illness.

(Baratz's Deposition, p. 9).

On April 29, 2013, the post-conviction court denied Sakha's petition in a seventeen-page order. Specifically, the post-conviction court concluded as follows:

> [Baratz] unequivocally testified that Sakha appeared to understand what was going on at all times during the proceedings and pendency of the case. It is equally clear that Sakha was able to assist trial counsel and to provide detailed and voluminous information to [Baratz], to [Gustafson] who conducted an extensive alcohol and drug evaluation, to the sentencing consultant [Brock], and to the presentence writer from probation. While [Baratz] decided after his thorough investigation that neither a competency evaluation nor an insanity defense were appropriate in Sakha's case, he did effectively and appropriately consider and investigate these potential issues. [Sakha] has failed to prove deficient performance; thus, this claims fails.

(Appellant's App. p. 19).

Sakha now appeals the denial of his petition. Additional facts will be provided if necessary.

Sakha argues that the post-conviction court erred in denying his petition. Specifically, he contends that "trial counsel was ineffective because he failed adequately to investigate Sakha's mental competence to understand the proceedings at sentencing." (Appellant's Br. p. 10).

In reviewing the judgment of a post-conviction court, this court considers only the evidence and reasonable inferences supporting its judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of witnesses. *Id.* at 468-69. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 469. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Id.*

To establish a claim of ineffective assistance of counsel, a petitioner must first demonstrate deficient performance on the part of counsel. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). This part of the test requires the petitioner to demonstrate that counsel's representation fell below an objective standard of reasonableness, and that counsel's errors were so serious that they resulted in a denial of the right to counsel guaranteed under the Sixth Amendment to the United States Constitution. *Id.* There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002).

This presumption can be rebutted only with strong and convincing evidence. *Elisea v. State*, 777 N.E.2d 46, 50 (Ind. Ct. App. 2002).

The petitioner must also show that counsel's deficient performance resulted in prejudice to the defense. *Smith*, 765 N.E.2d at 585. Specifically, the petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that the results of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Further, a claim of ineffective assistance of counsel based on a failure to investigate requires a showing of what additional information may have been garnered from further consultation or investigation and how that additional information would have aided in the preparation of the case. *Turner v. State*, 974 N.E.2d 575, 585 (Ind. Ct. App. 2012), *trans. denied*. Here, Sakha claims that trial counsel failed to investigate his competency at sentencing. Competency is defined as "whether a [petitioner] currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him." *Campbell v. State*, 732 N.E.2d 197, 202 (Ind. Ct. App. 2000).

Our review of the evidence reveals that at the time of the sentencing hearing, trial counsel obtained and reviewed Sakha's medical records and interviewed the physician who treated Sakha for depression the month before he committed the offenses. Trial counsel also spoke with Sakha and his family, ordered a substance abuse evaluation, and hired a sentencing consultant. Both the sentencing and substance abuse memoranda provided that Sakha had a dysfunctional childhood and suffered from major depression and polysubstance abuse. Neither report mentioned any concern that Sakha did not possess the

ability to consult rationally with his counsel or factually comprehend the proceedings, and Sakha's family expressed no such concerns. We further note that in addition to a lack of indicators of incompetency, Sakha gave a coherent and articulate statement of remorse at the sentencing hearing wherein he took full responsibility for his actions. Sakha has failed to show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

## CONCLUSION

Based on the foregoing, we conclude that the post-conviction court properly denied Sakha's petition.

Affirmed.

VAIDIK, C.J. and MAY, J. concur