ATTORNEY FOR APPELLANT
Ryan W. Redmon
Seymour, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General

Joby Jerrells
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 40S01-0602-CR-64

ROBERT TRIMBLE,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Jennings Superior Court, No. 40D01-0302-CM-116
The Honorable James Funke, Jr., Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 40A01-0311-CR-437

**February 21, 2006**

**Boehm, Justice.**

We hold that a police officer receiving a credible report of a violation from an identified concerned citizen may properly enter onto private property through the normal route of access to investigate. Once there, publicly viewable evidence of a crime may properly be seized without a warrant, particularly when there is a need to act promptly to protect the health or safety of another, whether human or animal.

**Factual and Procedural Background**

"Butchie" is a miniature Doberman Pinscher belonging to Vera Wilcox. The defendant, Robert Trimble, agreed to care for Butchie when Vera and her husband, Michael Wilcox, moved from Trimble's farmhouse in rural Jennings County. In early February 2003, Michael was on a social visit to Trimble's farm when he noticed that Butchie was chained to a small doghouse on a very cold day and had caught his leg in the cable. Michael reminded Trimble that Butchie was an inside dog and should not be kept outside in cold weather. Trimble assured Michael that the dog slept inside every night. Butchie had not had his required immunization, and Trimble promised the dog would soon be taken to the veterinary for shots and medicine.

Less than two weeks after Michael's visit, Trimble suffered a head injury while working on his farm and called Michael to take him to the hospital. Upon returning from the hospital, Michael found Butchie again chained to the doghouse in Trimble's snow-covered yard. Michael observed the dog and found that Butchie had no food or water, his leg was injured, his ears and genitals appeared frostbitten, and he seemed to be starved. Michael reported Butchie's condition to his wife, who told her sister, Cassie Adams. At approximately 10:00 p.m. in the evening of the same day, Adams telephoned Sergeant Barger of the Jennings County Sheriff's Department to report what she had heard about Butchie's condition.

After speaking with Michael, who confirmed that he had seen Butchie that day and that Butchie looked starved and in need of medical attention, Barger drove to Trimble's farm without a warrant. He pulled into Trimble's driveway, which wrapped around the back of Trimble's house, and parked his car behind the house. Most of the traffic to Trimble's house goes to the back door. When Barger left his car to approach the back door of Trimble's house, he passed a doghouse matching the description Michael had given. The doghouse was approximately three to five feet from the driveway and thirty feet from Trimble's house. When no one answered Barger's knock at the back door, Barger began to return to his car, but stopped at the doghouse and called to the animal he saw inside. When Butchie did not respond, Barger coaxed him out by pulling on his chain. The dog matched Butchie's description and Barger confirmed that he was in fact emaciated and had an injured leg. Barger called an animal control officer who removed Butchie from the property and took him to a shelter.

The State charged Trimble with cruelty to an animal, abandonment or neglect of an animal, and harboring a non-immunized dog. Trimble moved to suppress all evidence seized by Barger (i.e., Butchie) and all testimony regarding Barger's and the animal control officer's observations of Butchie. He cited the search and seizure provisions of the Fourth Amendment to the United States Constitution and Article I, Section 11, of the Indiana Constitution. The trial court denied the motion and Trimble was convicted of abandonment/neglect of an animal and harboring a non-immunized dog. Trimble was sentenced to ten days in jail and ordered to pay restitution to the Wilcoxes for their veterinary bills.

The Court of Appeals reversed. Trimble v. State, 816 N.E.2d 83, 86 (Ind. Ct. App. 2004). The court held that Barger's warrantless search of Butchie's doghouse violated Trimble's reasonable expectation of privacy under the Fourth Amendment to the United States Constitution. Id. at 90-91. The court further held that Barger's search of the doghouse and seizure of Butchie violated Article I, Section 11, of the Indiana Constitution. Id. at 92.

## I. The Fourth Amendment Claim

The Fourth Amendment to the Constitution of the United States protects citizens against unreasonable searches and seizures. The reasonableness of a search requires that the subject of the search has exhibited an actual subjective expectation of privacy that society as a whole is prepared to recognize as objectively "reasonable." Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The Fourth Amendment does not protect objects, activities, or statements that a citizen has exposed to the "plain view" of outsiders because the individual has expressed no intention of keeping those activities private. Id. at 361. Trimble argues that Butchie's doghouse was within the curtilage of his home and therefore not subject to warrantless intrusion. The Court of Appeals agreed, with Judge Sullivan dissenting.

We do not agree that the mere fact that an area subjected to police observation is within the curtilage transforms a warrantless observation or inspection into an unconstitutional search. See, e.g., California v. Ciraolo, 476 U.S. 207, 213 (1986). As Katz explained, the Fourth Amendment protects people, not places. Katz, 389 U.S. at 351. The protection afforded by the Fourth Amendment extends to the curtilage in order to protect personal and familial privacy in an area that is physically and psychologically linked to the intimacy of the home. Ciraolo, 476

U.S. at 213. But there is no Fourth Amendment protection for activities or items that, even if within the curtilage, are knowingly exposed to the public. <u>Katz</u>, 389 U.S. at 351; <u>Ciraolo</u>, 476 U.S. at 213 (observation of defendant's curtilage not a violation of the Fourth Amendment even where the area observed was surrounded by a 6-foot outer fence and a 10-foot inner fence when observations took place from publicly accessible airspace).

In this case, Butchie was tied up outside in an open yard where anyone who cared to observe his condition could easily do so. The fact that Butchie happened to be inside his doghouse at the particular moment that Barger walked by is irrelevant. Whether the dog is inside the doghouse or exposed to public view is subject to the dog's whims, so there can be no legitimate expectation of privacy in the appearance of a dog that has been tied up in an open area and available to public view.

Trimble argues that even if there is no legitimate expectation of privacy in Butchie's appearance, Barger's observations were possible only through his trespass onto private property, which is a per se violation of his Fourth Amendment rights. However, police entry onto private property and their observations do not violate the Fourth Amendment when the police have a legitimate investigatory purpose for being on the property and limit their entry to places visitors would be expected to go, such as walkways, driveways, and porches. "The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take that route for the purpose of making a general inquiry or for some other legitimate reason, they are free to keep their eyes open . . . ." 1 Wayne R. LaFave, <u>Search and Seizure: A Treatise on The Fourth Amendment</u> § 2.3(e), at 592-93 (4th ed. 2004) (internal quotations and footnotes omitted). <u>See also</u> <u>United States v. French,</u> 291 F.3d 945, 953 (7th Cir. 2002) (quoting LaFave); <u>United States v. Reyes</u>, 283 F.3d 446, 465 (2d Cir. 2002), <u>cert. denied</u>, (quoting LaFave); <u>Divello v. State</u>, 782 N.E.2d 433, 437 (Ind. Ct. App. 2003), <u>trans. denied</u>, (quoting LaFave).

Which areas of a given piece of real estate may reasonably be viewed as open to visitors is fact-specific. The determination will "necessarily include consideration of the features of the property itself, such as the existence of walkways and fences or other obstructions to access or viewing, the location of primary residential entryways, as well as the nature or purpose for the visitor's call." <u>Divello</u>, 782 N.E.2d at 438. Here the trial court denied the motion to suppress,

4

and the facts before it justified the conclusion that Barger's approach to Trimble's house was by the ordinary means of access. Trimble's driveway wraps around the back of his house and adjoins an open yard. Butchie's doghouse is only three to five feet from the driveway and sits on a direct line between the spot Barger parked his car in the driveway and Trimble's back door, the main entryway for visitors. Based on these facts, the trial court could reasonably find that Barger's short walk from his car past Butchie's doghouse to Trimble's back door, although within the curtilage of Trimble's house, was one that any visitor was invited to take. The same holds true as to his return trip from Trimble's back door to his car, which again put him on a direct line with Butchie's doghouse.

We conclude that there is no legitimate privacy interest in the appearance of a dog that has been tied up outside in an area readily observable by the public. Accordingly, Barger's observation and inspection of Butchie did not violate the Fourth Amendment to the United States Constitution because they were made from an area that the public could legitimately be expected to traverse. Once Butchie was examined, Barger had ample reason based on both probable cause (apparent animal abuse) and exigent circumstances (Butchie's health) to seize the dog.

## II. The Claim Under the Indiana Constitution

Trimble argues that the warrantless search of Butchie's doghouse and the seizure of Butchie from within was unreasonable and therefore violated Article I, Section 11, of the Indiana Constitution. Article I, Section 11, reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution. Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances. Moran v. State, 644 N.E.2d 536, 539 (Ind. 1994). We will consider the following factors in assessing reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the

5

degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).

Here, the degree of intrusion is minimal. Barger entered onto Trimble's property only though generally accessible routes. He first knocked on the door to follow up on an apparently credible lead. He then found Butchie and pulled him out of the doghouse without intruding into any enclosed space. The only item examined was Butchie himself, who was open to public view. Trimble argues that the mere presence of the police on his property is intrusive enough to render it unreasonable. We have recently observed that property lines are "largely irrelevant to the degree of intrusion inflicted by the search or seizure." Litchfield, 824 N.E.2d at 363. Police are authorized to conduct routine preliminary investigations, including calling on private citizens through normal means of approach to residences or other structures.

If a search is based on a concerned citizen's report of an alleged crime, the degree of concern, suspicion, or knowledge that a violation has occurred is essentially the same as the reasonable suspicion required for an investigatory stop. Reasonable suspicion is gauged by the totality of the circumstances, including such factors as: 1) whether the citizen has personally witnessed the reported crime, 2) whether the police subsequently corroborate details of the citizen's report, 3) whether the citizen has identified herself and thereby subjected herself to civil liability or prosecution for false reporting, and 4) the absence of circumstances casting the citizen's reliability into question. See Kellems v. State, 2006 Ind. LEXIS 130, *1 (Ind. Feb. 16, 2006) (holding that "a tip from an identified informant or concerned citizen coupled with some corroborative police investigation is sufficient to create reasonable suspicion for an investigatory stop"); Pawloski v. State, 380 N.E.2d 1230, 1232-33 (Ind. 1978) (discussing relevant factors in assessing reliability of reports of criminal activity from "cooperative citizens").

In the current case, all of these factors support the reliability of Michael's report of criminal activity. Michael witnessed the alleged abuse first hand; Barger corroborated Michael's description of the doghouse, its surroundings, and Butchie's appearance; Michael, Vera, and Adams all identified themselves to the police; and there was no indication that that these citizens

6

were unreliable. Hence, Barger's degree of concern that a violation had occurred was reasonable.

Finally, the severity of the law enforcement need embraces proper concern for the health and safety of others, including animals. Where a police officer has received a timely tip concerning a possibly dangerous situation, the privacy interest is diminished. See Benefiel v. State, 578 N.E.2d 338, 345 (Ind. 1991) (holding that the potential danger to human life "certainly outweighed appellant's reasonable expectations to privacy.").

We are not suggesting that the information available to Barger would justify entry into Trimble's house. But it was sufficient to trigger an investigation that was done from essentially public space, and this investigation justified further action. Once in the yard, the object of his search—an ambulatory animal in open space—is fair game; particularly when there are immediate health concerns regarding the dog. We conclude that Barger's visit to Trimble's house and his subsequent actions were reasonable under the Indiana Constitution.

### Conclusion

Transfer is granted. The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson and Sullivan, JJ. concur.

Rucker, J., concurs in Part I and concurs in result in Part II without separate opinion.