## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
May 13 2015, 10:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Kevin S. Wang,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 13, 2015

Court of Appeals Case No.
40A05-1409-CR-442

Appeal from the Jennings Circuit Court

The Honorable Jon W. Webster, Judge

Cause No. 40C01-1403-FB-16

---

**Najam, Judge.**

## Statement of the Case

[1]     Kevin Wang appeals his convictions for dealing in methamphetamine, as a Class B felony; two counts of possession of chemical reagents or precursors

with intent to manufacture controlled substances, both as Class D felonies; and maintaining a common nuisance, as a Class D felony. Wang presents two issues for our review, which we revise and restate as follows:

1. Whether the trial court committed fundamental error when it admitted certain evidence obtained pursuant to a search warrant.

2. Whether the State presented sufficient evidence to support his convictions.

We affirm.

## Facts and Procedural History

Wang owns a home in Jennings County with a detached garage ("Wang residence"). On December 11, 2013, deputies with the Jennings County Sheriff's Department responded to a request for assistance from detectives with the Bartholomew County Sheriff's Department regarding a hot tub and flatbed trailer stolen from a store in Bartholomew County but recovered at a driveway shared by the Wang residence. Deputies from both Departments responded to the Wang residence, where they observed the stolen goods.

While assisting the Bartholomew County detectives with their investigation related to the trailer and hot tub, two plastic totes—one clear and one an opaque blue—placed outside of the front of the detached garage caught the attention of Detective Jeffrey Jones with the Jennings County Sheriff's Department, who had specialized training in the identification and processing of methamphetamine labs. The totes were covered in several inches of snow,

and the clear tote was stacked on top of the blue tote, which was full of apparent refuse and open at its top. Despite the snow, Detective Jones could see through the clear tote, in which he observed yellow aerosol cans labeled "starting fluid." Tr. at 207. And, through the open top of the blue tote, Detective Jones observed lithium battery hulls.[1] Because of his training, Detective Jones recognized both items as common ingredients used in the manufacturing of methamphetamine.

[4] On this basis, Detective Jones requested and received a search warrant for the Wang residence. Further, Detective Jones contacted Trooper Marty Mead, who worked in the methamphetamine suppression section of the Indiana State Police. As a member of that section, Trooper Mead had specialized training in the processing and disassembly of methamphetamine labs. Together, Trooper Mead, Detective Jones, and other Jennings County deputies executed the search warrant at the Wang residence.

[5] The officers had difficulty accessing the garage to conduct the search because its side door was reinforced with steel, locked at the handle, and padlocked. As a result, the officers could not kick open the door but had to cut the padlock, break a window, and unlock the door from the inside. The home, however, provided easy access to the officers. It lacked electricity and was unlocked to

---

[1] Detectives Jones' initial search of the totes was entirely visual. He did not physically search the totes until he had obtained a search warrant.

allow a running generator to connect the home to power by means of a cracked sliding-glass door through which the generator's extension cords ran.

[6] While executing the search warrant, the officers discovered security cameras and, in both the garage and home, large quantities of ingredients and instrumentalities used in the manufacture of methamphetamine, which indicated to the officers that the operation was active and ongoing. The discovered items were found intermixed with Wang's personal property, including a laptop bearing the login name "Kevin Wang," a letter to Wang dated December 2, 2013, and a local newspaper dated December 8, 2013. Three vehicles registered to Wang were also located at the home, two of which were snow covered but one of which showed signs of having been recently cleared of snow. And, inside the home, police located Wang's two dogs, which looked nourished and cared for,[2] and a kerosene heater in the bedroom. Although Wang was not at the home when officers executed the search warrant, the home demonstrated signs of having been lived in, such as dirty dishes in the kitchen sink and clean dishes in a drying rack located on the kitchen counter.

[7] On March 21, 2014, the State charged Wang[3] with one count of dealing in methamphetamine, as a Class B felony; two counts of possession of chemical reagents or precursors with intent to manufacture controlled substances, both as

_____

[2] Wang contended that a neighbor cared for the dogs.

[3] A warrant was issued for Wang's arrest on March 24, which was served on April 11.

Class D felonies; possession of marijuana, as a Class D felony; and maintaining a common nuisance, as a Class D felony. The trial court held Wang's jury trial on August 5 through August 7, 2014, at which Wang argued in defense that his home was frequently burglarized,[4] he had been absent from his home for some time, and the methamphetamine lab was established in his absence by burglars.

[8] At the conclusion of his trial, the jury acquitted Wang of possession of marijuana but convicted him on all other charges. Following a sentencing hearing on September 4, 2014, the trial court "merged" Wang's other convictions with his conviction for dealing in methamphetamine and sentenced him to eighteen years executed in the Indiana Department of Correction. Appellant's App. at 135. This appeal ensued.

# Discussion and Decision

## Issue One: Admission of Evidence

[9] Wang first contends that the trial court committed fundamental error when it admitted certain evidence against him. As our supreme court stated in *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013):

> "Failure to object at trial waives the issue for review unless fundamental error occurred." *Treadway v. State*, 924 N.E.2d 621, 633 (Ind. 2010). The fundamental error doctrine is an exception

---

[4] In rebuttal, the State offered evidence that Wang had not called 9-1-1 to report a burglary since 2008 and that neither the home nor the garage exhibited signs of damage or forced entry. While, because of the generator, the home was unlocked when police arrived, Wang testified that he had left the generator in the garage the last time he was present at the home.

to the general rule that the failure to object at trial constitutes procedural default precluding consideration of the issue on appeal. *See Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). We have elaborated on the underlying rationale for this exception:

> There are very strong reasons to require objections at trial to preserve error. Important among them is that the trial court can often correct an error if it is called to the court's attention. This can result in enormous savings in time, effort and expense to the parties and the court, including avoiding an appeal and retrial. Moreover, if matters can be heard on appeal despite failure to object at trial, parties detecting such an error may be encouraged to take their chances on the result in the trial court despite the error, secure in the knowledge that a retrial is available. Despite these considerations, the doctrine of fundamental error has been invoked to ensure failure to object where appellate courts have found an error to be sufficiently egregious.

*State v. Daniels*, 680 N.E.2d 829, 835 (Ind. 1997). Hence, "[t]he 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (internal quotation omitted). "This exception is available only in egregious circumstances." *Id.* (internal quotation omitted).

[10] Wang asserts that the trial court committed fundamental error when it admitted the evidence discovered during the search of the Wang residence. Specifically,

he contends that the initial search of the totes located outside of his garage was conducted without a warrant and did not satisfy the requisites of the plain view exception to the warrant requirement. Moreover, he argues, because the evidence discovered during the search of those totes provided the basis for the search warrant itself, the search warrant and everything discovered pursuant to its execution constitutes fruit of the poisonous tree. Therefore, Wang contends that all evidence admitted against him was obtained in violation of the Fourth Amendment to the United States Constitution,[5] and, because this evidence provided the sole basis for his conviction, he concludes that it was fundamental error for the trial court to admit the evidence, even in the absence of an objection. We disagree.

[11] Although the Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures, it "does not protect objects, activities, or statements that a citizen has exposed to the 'plain view' of outsiders because the individual has expressed no intention of keeping those activities private." *Trimble v. State*, 842 N.E.2d 798, 801 (Ind. 2006).[6] For the plain view doctrine to apply, the following conditions must be met: "(1) police

---

[5] Wang also states that the search also violated Article 1, Section 11 of the Indiana Constitution, but he presents no separate argument on this issue. Thus, his State constitutional argument is waived, and we consider only his arguments related to the United States Constitution. *See, e.g.*, *White v. State*, 772 N.E.2d 408, 411 (Ind. 2002).

[6] Although Wang presents no argument that the totes were within the curtilage of his home, we note that "the mere fact that an area subjected to police observation is within the curtilage [does not] transform[] a warrantless observation or inspection into an unconstitutional search." *Trimble*, 842 N.E.2d at 801. "[T]here is no Fourth Amendment protection for activities or items that, even if within the curtilage, are knowingly exposed to the public." *Id.* at 802.

[must] have a legal right to be at the place from which the evidence can be plainly viewed; (2) the incriminating character of the evidence [must be] immediately apparent; and (3) police [must] have a lawful right of access to the object itself." *Eaton v. State*, 889 N.E.2d 297, 301 (Ind. 2008).

[12] Here, Wang concedes that officers had a legal right to be in his driveway, from which they observed the totes, but he asserts that "the record fails to demonstrate that [Detective Jones] was able to identify items of a clearly criminal nature or that the officer had legal access to the items in the tote[s]." Appellant's Br. at 9. However, rather than challenging each element of the plain view test individually, Wang proffers a single, overlapping argument: he contends that the snow present on top of the totes precluded Detective Jones from seeing the starting fluid cans and the lithium battery hulls. And, although Wang recognizes that Detective Jones testified that, despite the snow, he could see the starting fluid cans and the battery hulls, Wang asserts that Detective Jones' testimony "is[,] on its face[,] directly contradicted by the photographic evidence." Appellant's Br. at 10. Specifically, Wang points to exhibits 5 and 6 to support his argument.

[13] But Wang's argument asks that we reweigh the evidence, which we will not do. *See State v. Figgures*, 839 N.E.2d 772, 776 (Ind. Ct. App. 2005), *trans. denied*. Detective Jones' testimony supports the trial court's decision to admit the evidence. Further, as the State correctly notes, Detective Jones testified to exhibits 47 through 50, which he stated were photographs that depicted the totes in the condition they were in when he first saw them, not exhibits 5 and 6,

which were photographs taken during the execution of the search warrant and testified to by Detective Mead. Therefore, we cannot state that the trial court erred, much less committed fundamental error, when it admitted the evidence discovered during the execution of the search warrant against him.

### Issue Four: Sufficiency of the Evidence

Next, Wang contends that the State failed to present sufficient evidence to support his convictions. Our standard of review for sufficiency of the evidence claims is well-settled. *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000).

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict. We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Pillow v. State*, 986 N.E.2d 343, 344 (Ind. Ct. App. 2013) (citations and quotation marks omitted).

Again, Wang does not challenge any specific element of the offenses for which he was convicted but, instead, proffers one overlapping argument regarding all of his convictions: "Wang was not caught with any contraband in his possession." Appellant's Br. at 12. In this respect, however, Wang simply asks us to credit his testimony that "he was not actually in possession of the property . . . while an untold number of people would have had unwelcome

access to the home given the fact that it was unsecured and the doors were open." *Id.* at 13.

[16] Once more, Wang requests that we reweigh the evidence, which is the province of the trial court. The trial court heard evidence that supports a determination that Wang was in possession of his home. Namely, three vehicles registered to Wang were located at his home, including one that had recently been cleared of snow. Moreover, a recent piece of mail addressed to Wang was found inside of his home, as was a newspaper dated only three days before the execution of the search warrant. The home also demonstrated signs of having been recently lived in. Finally, intermixed with ingredients and instrumentalities used in the manufacture of methamphetamine, officers found Wang's two dogs, which were fed and cared for, and personal items that belonged to Wang, such as a computer bearing his name on its login screen. Therefore, we hold that Wang's conviction was supported by sufficient evidence.

[17] Affirmed.

Baker, J., and Friedlander, J., concur.