J. A30033/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ROBERT DAVID REINHART, | : | No. 498 WDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 9, 2017,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0000724-2016

BEFORE:  BOWES, J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED NOVEMBER 28, 2018**

This case returns to us from the Court of Common Pleas of Allegheny County.  The trial court conducted an evidentiary hearing relating to appellant's motion to dismiss pursuant to Pa.R.Crim.P. 600 on June 21, 2018, pursuant to this court's May 21, 2018 memorandum.  Having received the record of the Rule 600 hearing from the trial court, along with its findings, we shall now consider appellant's appeal on its merits.

The trial court made the following factual determination:

> [Elizabeth Police Department Officer Garret Kimmel's] initial observation of [appellant] was [appellant] driving a quad on a road where quads are not allowed. The officer noticed a very distinguishable characteristic on the front of the quad—a fishing rod. Within minutes of that initial observation, followed by losing track of the vehicle, the officer saw that very same quad parked alongside a house in a neighboring jurisdiction, maybe 15 yards from the road.  He

approached the quad. He touched it. It was warm. The grass between the road and its resting place gave every appearance of it having been recently been driven over that patch of grass. He then went to the front door and knocked. He interacted with Scott Johnson. After some dialogue at the door, which included Johnson telling the officer that the quad was "Bob's," home owner Johnson[] allowed the officer to enter his house. From that [] vantage point, the [o]fficer saw the male that [was riding] on the quad.

Trial court opinion, 8/3/2017 at 5 (internal quotation marks and citations to the record omitted).

The procedural history of this case, as stated by our May 21, 2018 memorandum is as follows:

The Commonwealth charged appellant with the following offenses: DUI highest rate of alcohol, DUI general impairment, habitual offenders, driving while BAC 0.02 or greater while license is suspended, driving without a license, operating a snowmobile/ATV on streets and highways, unlawful operation, unlawful operation of snowmobile/ATV under influence, proof of liability insurance required to be produced and displayed, driving an unregistered vehicle, improper display of registration plate, failure to signal, giving false information, investigation by officer/duty of operator, fleeing or attempting to elude a police officer, and failure to yield to emergency vehicle.[Footnote 1] At the preliminary hearing on January 26, 2016, the following charges were dismissed: driving an unregistered vehicle, failure to signal, failure to yield to emergency vehicle, fleeing or attempting to elude a police officer, giving false information, improper display of registration plate, and investigation by officer/duty of operator. All of the remaining charges were held over for trial.

[Footnote 1] 75 Pa.C.S.A. §§ 3802(c), 3802(a)(1), 6503.1, 1543(b)(1.1)(i), 1501(a), 7721(a), 7711.1(a), 7726(a)(3),

7730(b), 1301(a), 1332(a), 3335(a), 3748, 6308(a), 3733(a), and 3325(a), respectively.

On April 5, 2016, appellant filed an omnibus pretrial motion in which he sought to suppress evidence. A suppression hearing and trial were originally scheduled for June 7, 2016. On May 17, 2016, the Commonwealth filed a motion for continuance, which the trial court granted. The suppression hearing and trial were rescheduled for September 8, 2016.

On September 8, 2016, the trial court denied appellant's omnibus pretrial motion following a suppression hearing, and immediately called the case for trial. The Commonwealth, having dismissed its only witness, Elizabeth Police Department Officer Garret Kimmel, at the conclusion of his suppression hearing testimony, orally moved for a continuance, which the trial court granted. The trial was rescheduled for December 12, 2016. On November 10, 2016, appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600, which the trial court denied on December 12, 2016, following a hearing immediately preceding trial.

At the conclusion of the bench trial on December 12, 2016, the trial court convicted appellant of DUI highest rate, DUI general impairment, driving while BAC 0.02 or greater while license is suspended, driving without a license, operating a snowmobile/ATV on streets and highways, unlawful operation of unregistered snowmobile/ATV, and unlawful operation of snowmobile/ATV under influence. The trial court acquitted appellant of proof of insurance required to be produced and displayed. The Commonwealth withdrew the habitual offenders charge. On March 9, 2017, the trial court sentenced appellant to one year less one day to two years less two days' imprisonment.

Appellant filed a notice of appeal to this court on March 30, 2017. The trial court ordered appellant to file a concise statement of errors complained of on

appeal pursuant to Pa.R.A.P. 1925(b) and appellant complied. The trial court filed its opinion pursuant to Pa.R.A.P. 1925(a) on August 3, 2017.

***Commonwealth v. Reinhart***, No. 498 WDA 2017, unpublished memorandum at *1-3 (Pa.Super. filed May 21, 2018). We filed a memorandum remanding the case on May 21, 2018, to provide the trial court with an opportunity to conduct a fuller hearing pursuant to Pa.R.Crim.P. 600. ***See id.*** at *7. The trial court did so on June 21, 2018.

We may now address the following issues raised on appeal:

> I.   Did the [trial] court err in refusing to grant [appellant's] Rule 600 motion when all of the delay in this case was attributable to the Commonwealth and trial was not commenced until 62 days beyond the mechanical run date?
>
> II.  Did the [trial] court err in refusing to suppress all evidence, including the identification of [appellant] and blood evidence, following Officer Kimmel's illegal search of the curtilage at 914 15th Street, Elizabeth, Pennsylvania?

Appellant's brief at 5 (full capitalization omitted).

In his first issue for our review, appellant avers that the Commonwealth violated his constitutional right to a speedy trial pursuant to Pennsylvania Rule of Criminal Procedure 600.

> "In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." ***Commonwealth v. Hill***, 736 A.2d 578, 581 (Pa. 1999). ***See also Commonwealth v. McNear***, 852 A.2d 401 (Pa.Super. 2004). "Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due

> consideration." ***Commonwealth v. Krick***, 67 A.2d 746, 749 (Pa.Super. 1949). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." ***Commonwealth v. Jones***, 826 A.2d 900, 907 (Pa.Super. 2003) (***en banc***) (citing ***Commonwealth v. Spiewak***, 617 A.2d 696, 699 n.4 (Pa. 1992)).
>
> "The proper scope of review . . . is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court." ***Hill***, ***supra*** at 581; ***McNear***, ***supra*** at 404. ***See also Commonwealth v. Jackson***, 765 A.2d 389 (Pa.Super. 2000), ***appeal denied***, 793 A.2d 905 (Pa. 2002). "[A]n appellate court must view the facts in the light most favorable to the prevailing party." ***Id.*** at 392.

***Commonwealth v. Hunt***, 858 A.2d 1234, 1238-1239 (Pa.Super. 2004), ***appeal denied***, 875 A.2d 1073 (Pa. 2005).

The comment to Rule 600 provides that "delay in the time of trial that is attributable to the judiciary may be excluded from the computation of time." Pa.R.Crim.P. 600 cmt., citing ***Commonwealth v. Crowley***, 466 A.2d 1009 (Pa. 1983); ***see also Commonwealth v. Mills***, 162 A.3d 323, 325 (Pa. 2017), citing ***Commonwealth v. Bradford***, 46 A.3d 693, 705 (Pa. 2012) ("periods of judicial delay are excludible from calculations under the rule").

In the instant appeal, the Elizabeth Borough Police Department filed a criminal complaint against appellant on October 11, 2015. Pursuant to Rule 600, the Commonwealth was required to commence trial on or before October 11, 2016. The Commonwealth originally listed this case for trial on

June 7, 2016. On May 17, 2016, the Commonwealth requested a continuance due to the unavailability of Officer Kimmel. The trial court granted the Commonwealth's request, rescheduling the trial for September 8, 2016.

As noted above, the trial court called the case to trial on September 8, 2016, immediately upon the conclusion of the suppression hearing. The Commonwealth, having dismissed Officer Kimmel at the conclusion of his suppression hearing testimony, indicated it would not be able to proceed that day with trial, and the trial court responded by stating, "Pick a date, whatever you want." (Notes of testimony, 9/8/16 at 67.)

At the Rule 600 hearing, Kristen Reitmeyer, the trial court's minute clerk, testified that even if the Commonwealth had been prepared to proceed to trial immediately after the suppression hearing, the trial court would have been unable to proceed due to jury selection taking place in another case. (Notes of testimony, 6/21/18 at 8.) Additionally, appellant at that time was still seeking a jury trial. Ms. Reitmeyer further testified that the trial would be postponed to a date in which there would not be a conflict with other jury trials or with either of the attorneys' calendars. (*Id.*) Ms. Reitmeyer also testified that these postponements could last two to three months. (*Id.* at 9.) When determining a new date for appellant's trial, Ms. Reitmeyer testified that she "wanted to schedule it on a day [she] knew we would be able to proceed so we didn't run into the same issue." (*Id.* at 10.) Critically, Ms. Reitmeyer stated that the postponement of appellant's trial on September 8, 2016, was

attributable to neither the Commonwealth nor the defense, but rather to unavailability of the trial court. (*Id.* at 9.)

Accordingly, we find that the delay in the trial in this case was attributable to the trial court, thus rendering the period of delay excludable for Rule 600 purposes.[1] Therefore, we find that the trial court ultimately did not abuse its discretion when it denied appellant's Rule 600 motion.

In his second issue, appellant avers that the trial court erred when it refused to suppress evidence, including the identification of appellant and blood evidence.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the

---

[1] We acknowledge Justice Wecht's concurring opinion in **Mills**, in which he opines that judicial delay is not a "mechanism or totem" that exempts the Commonwealth from demonstrating that it is "ready, able, and willing to proceed with the case against the defendant." **Mills**, 162 A.3d at 326 (Wecht, J., concurring). This, however, is not binding authority on this court.

conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. McAdoo***, 46 A.3d 781, 783-784 (Pa.Super. 2012), ***appeal denied***, 65 A.3d 413 (Pa. 2013), quoting ***Commonwealth v. Hoppert***, 39 A.3d 358, 361-362 (Pa.Super. 2012), ***appeal denied***, 57 A.3d 68 (Pa. 2012) (citations omitted).

We must first determine whether appellant had a reasonable expectation of privacy as a guest at Mr. Johnson's residence.

Both the United States Constitution and the Pennsylvania Constitution guarantee that individuals shall not be subject to unreasonable searches or seizures.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by affiant.

Pa. Const. Art. I, § 8. A search or seizure conducted without a warrant is, under the Fourth Amendment and Article I, Section 8, presumed to be

unconstitutional. ***Commonwealth v. McCree***, 924 A.2d 621, 627 (Pa. 2007),

citing ***Horton v. California***, 496 U.S. 128, 134 n.4 (1990) (citations omitted).

Evidence obtained as a result of an unlawful search is subject to the fruit

of the poisonous tree doctrine.  The Supreme Court of the United States has

stated that any material, tangible, or verbal evidence "obtained either during

or as a direct result of an unlawful invasion" is inadmissible at trial.  ***Wong***

***Sun v. United States***, 371 U.S. 471, 485 (1963).

Pennsylvania courts have recognized, however, the following exception

to the warrant requirement:

> First, police officers have the authority to enter the curtilage for the purpose of conducting an investigation. ***Commonwealth v. Gibson***, [] 638 A.2d 203, 207 ([Pa.] 1994) ("police have the power to knock on the doors of the citizens of this Commonwealth ***for investigatory purposes*** without probable cause") (emphasis added).  Second, entry onto the curtilage generally is not a Fourth Amendment violation when the curtilage is used by the public. ***Cf.*** [***Commonwealth v. Gibbs***, 981 A.2d 274, 280 (Pa.Super. 2009), ***appeal denied***, 3 A.3d 670 (Pa. 2010),] ("courts which have found that the front porch constitutes curtilage have generally found no Fourth Amendment violation where the porch in question is used by the general public"); ***see generally*** LaFave, *Search And Seizure: A Treatise On The Fourth Amendment,* § 2.3(f) (5th ed.) (database updated October 2015) ("when the police come on to private property to conduct an investigation . . . and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment").[Footnote 7]
>
> > [Footnote 7] Professor LaFave gathers 49 cases in support of this precept,

> including ***Trimble v. State***, 842 N.E.2d 798, 802 (Ind.2006) (police entry onto private property and their observations do not violate Fourth Amendment when police have legitimate investigatory purpose for being on property and limit their entry to places visitors would be expected to go; the route which any visitor to residence would use is not private in Fourth Amendment sense, so if police take that route for purpose of making general inquiry or for some other legitimate reason, they are free to keep their eyes open), and ***State v. Lodermeier***, 481 N.W.2d 614, 624 (S.D. 1992) (approving officer's examination of exterior of garden tractor parked in driveway, because "even though it is part of the curtilage, an officer with legitimate business may enter a driveway and, while there, may inspect objects in open view"). ***See*** LaFave, § 2.3(f) at n. 225 and 229.

***Commonwealth v. Eichler***, 133 A.3d 775, 784 (Pa.Super. 2016), ***appeal denied***, 161 A.3d 791 (Pa. 2016).

The facts of the instant appeal reflect that Officer Kimmel entered Mr. Johnson's property for the purposes of conducting an investigation. The fact that Officer Kimmel entered the side yard of Mr. Johnson's property to determine whether the quad was hot to the touch is inconsequential. Officer Kimmel testified that while he was on patrol on Barrett Avenue in Elizabeth on October 9, 2015, he observed a red quad traveling in the opposite direction. (Notes of testimony, 9/8/16 at 23-24.) Officer Kimmel attempted to pursue the quad; however, he lost sight of the vehicle and began searching for the quad in the immediate area. (***Id.***) From his seated position in his

patrol car, Officer Kimmel observed the quad in plain view parked on Mr. Johnson's property. (*Id.* at 25.) Officer Kimmel further testified that the quad he observed parked on Mr. Johnson's property was the same color, shape, and had the same number of wheels as the vehicle he observed on Barrett Avenue. (*Id.* at 26.) Additionally, Officer Kimmel testified that the quad parked on Mr. Johnson's property had a fishing rod attached to the front, and that the quad he observed on Barrett Avenue also had a fishing rod attached to the front. (*Id.*) Upon his arrival to Mr. Johnson's property, Officer Kimmel observed freshly pressed down grass in the yard, which appeared to be from tire tracks. (*Id.* at 28.)

Upon observing the freshly pressed down grass in the yard, Officer Kimmel approached the quad, felt near the exhaust area, and noted that it was hot to the touch. (*Id.*) Officer Kimmel then knocked on the door to Mr. Johnson's house. (*Id.*) Mr. Johnson answered the door and denied owning the quad. (*Id.* at 29.) Officer Kimmel testified that upon Mr. Johnson's opening the door, Officer Kimmel was able to observe appellant sitting at the dining room table. (*Id.*) Officer Kimmel further testified that he recognized appellant as the same person that he observed driving the quad on Barrett Avenue. (*Id.*)

The trial court determined that Officer Kimmel's testimony was credible, and the record before us supports this conclusion. We therefore find that Officer Kimmel's decision to knock on the door to Mr. Johnson's house was

based on his observation from his patrol car of a quad parked in the side yard matching the description of the quad he had previously observed on Barrett Avenue. We further find that Officer Kimmel's entry onto Mr. Johnson's property was not in violation of appellant's constitutional rights against unreasonable search and seizure because Officer Kimmel's decision to knock on Mr. Johnson's door was not based solely on his inspection of the quad, but rather his observations from his squad car and his observations of the fresh tracks in the grass on Mr. Johnson's property. (**See id.** at 40.)

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/28/2018