

FILED
Mar 22 2019, 8:47 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew W. Foster
The Law Office of Andrew W. Foster, LLC
Rockport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Zachary J. Taylor, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 22, 2019 <br><br> Court of Appeals Case No. 18A-CR-1757 <br><br> Appeal from the Spencer Circuit Court <br><br> The Honorable Jon A. Dartt, Judge <br><br> Trial Court Cause No. 74C01-1801-F4-12 |

**May, Judge.**

[1] Zachary J. Taylor appeals his convictions of Level 5 felony possession of methamphetamine[1] and Level 6 felony possession of marijuana.[2] Taylor argues the search of his apartment violated his rights against illegal search and seizure under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We affirm.

## Facts and Procedural History[3]

[2] On January 5, 2018, Rockport Police Officer Shon Shourds responded to an anonymous tip of drug activity at Taylor's apartment. Officer Shourds drove by the location and did not see any suspicious activity. After a second anonymous call reporting drug activity at Taylor's apartment, Officer Shourds contacted Police Chief Kyle Maldonado, who directed Officer Shourds to go to Taylor's apartment to "do a knock and talk." (Tr. Vol. II at 132.) Chief Maldonado met Officer Shourds there and accompanied him to Taylor's apartment door.

[3] Officers heard voices from inside Taylor's apartment as they approached. The door had a window, which was covered with blinds, with the exception of a few inches at the bottom of the window. Before knocking, Officer Shourds "peeked through or glanced through" the gap under the blinds, (id. at 49), and saw

---

[1] Ind. Code § 35-48-4-6.1(b) (2014).

[2] Ind. Code § 35-48-4-11(c) (2017).

[3] We held oral argument in this case on February 21, 2019, at Vincennes University. We thank the University for its hospitality and counsel for their able presentations.

Taylor and a female who was holding a small, cylindrical glass pipe used to consume tobacco or illegal substances. Officer Shourds testified he had to "adjust his body" to see through the gap. (*Id.*) Officer Shourds did not knock on the door. Instead the officers returned to the parking lot to obtain a search warrant.

[4] While the officers were in the parking lot pursuing the search warrant, they saw Taylor and the woman exit Taylor's apartment and go separate directions. Officer Shourds recognized Taylor, exited the patrol car, and asked Taylor if he knew the woman's name. Taylor told Officer Shourds the woman was Angela Stokes and gave him Stokes' address. Officer Shourds proceeded to Stokes' nearby apartment.

[5] Officer Shourds knocked on Stokes' door, and she answered. He asked if he could speak with her, and she agreed. Officer Shourds told Stokes she was going to jail because he had observed her smoking methamphetamine at Taylor's apartment. During the conversation, Stokes gave Officer Shourds a smoking device similar to the one he saw her holding in Taylor's apartment, as well as multiple pills she claimed Taylor had given her to sell. Officer Shourds arrested Stokes.

[6] While the officers were still waiting for the search warrant, Taylor returned to his apartment. Officers were concerned that Taylor would destroy evidence in the apartment, so they would not let Taylor enter his apartment. Taylor became angry, but eventually calmed down and left. Officers received the

search warrant shortly thereafter, and Taylor returned to his apartment while officers were in the process of searching it. Other officers had arrived at the scene in the intervening moments and detained Taylor.

[7] In Taylor's apartment, officers found methamphetamine, marijuana, and a digital scale. Officers arrested Taylor. The State charged Taylor with Level 5 felony dealing in a narcotic drug,[4] Level 6 felony possession of methamphetamine,[5] Level 6 felony maintaining a common nuisance,[6] Level 6 felony dealing in marijuana,[7] and Class A misdemeanor possession of marijuana.[8] The State subsequently amended the charging information and added charges of Level 4 felony dealing in a narcotic drug,[9] Level 5 felony possession of methamphetamine,[10] Level 6 felony dealing in marijuana,[11] and Class B misdemeanor possession of marijuana.[12]

[8] On April 2, 2018, Taylor filed a motion to suppress the evidence found in his apartment, alleging the search of his apartment violated his Fourth Amendment

---

[4] Ind. Code § 35-48-4-1(a) (2017).

[5] Ind. Code § 35-48-4-6.1(a) (2014).

[6] Ind. Code § 35-45-1-5(c) (2017).

[7] Ind. Code § 35-48-4-10(c) (2016).

[8] Ind. Code § 35-48-4-11(b) (2017).

[9] Ind. Code § 35-48-4-1(c) (2017).

[10] Ind. Code § 35-48-4-6.1(b) (2014).

[11] Ind. Code § 35-48-4-10(c) (2017).

[12] Ind. Code § 35-48-4-11(a) (2017).

and Article 1, Section 11 rights against illegal search and seizure. He argued the evidence obtained as part of the search of his apartment was fruit of the poisonous tree because Officer Shourds conducted an illegal warrantless search when he repositioned his body to look in the gap between the blinds covering Taylor's door window and the edge of the window. The trial court held a hearing on Taylor's motion to suppress on April 13, 2018, and denied it on May 1, 2018.

[9] The trial court held Taylor's jury trial on May 9, 2018. During trial Taylor continued his objection to the admission of the evidence found in his apartment. The jury returned guilty verdicts on Level 6 felony possession of methamphetamine, Level 6 felony maintaining a common nuisance, and Class B misdemeanor possession of marijuana. Taylor subsequently pled guilty to having prior convictions that enhanced two of those convictions to Level 5 felony possession of methamphetamine and Level 6 felony possession of marijuana. The trial court vacated the maintaining a common nuisance conviction due to double jeopardy concerns. On June 14, 2018, the trial court sentenced Taylor to an aggregate sentence of fourteen years, with one year suspended to probation.

# Discussion and Decision

[10] The trial court denied Taylor's pre-trial motion to suppress evidence, and Taylor made timely objections to the admission of evidence at trial. Because Taylor appeals following his conviction, rather than from the trial court's order

denying his motion to suppress, the question before us is properly framed as whether the trial court abused its discretion in admitting the evidence. *Shell v. State*, 927 N.E.2d 413, 418 (Ind. Ct. App. 2010).

[11] Admission of evidence at trial is left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review its determinations for an abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. at 260. We will not reweigh evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Marcum v. State*, 843 N.E.2d 546, 547 (Ind. Ct. App. 2006). We also consider uncontested evidence favorable to the defendant. *Id*. The record must disclose substantial evidence of probative value that supports the trial court's decision. *Gonser v. State*, 843 N.E.2d 947, 949 (Ind. Ct. App. 2006). The trial court's ruling will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Id*.

## Fourth Amendment

[12] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting such searches without a warrant supported by probable cause. To deter State actors from violating that prohibition, evidence obtained in violation of the Fourth Amendment generally is not admissible in a prosecution of the citizen whose right was violated. *Clark,* 994 N.E.2d at 260. The State has the burden of

demonstrating the admissibility of evidence collected during a seizure or search. *Id.*

[13] The threshold issue here is whether Officer Shourds' actions while in the curtilage of Taylor's apartment was an illegal search in violation of the Fourth Amendment. When approaching Taylor's apartment to complete a knock and talk, Officer Shourds heard voices. He noticed there was a gap under the blinds covering Taylor's door window. Officer Shourds leaned over and peered through the gap to see Taylor and Stokes. Taylor argues Officer Shourds' act of peering through the gap in the blinds was an illegal search under the Fourth Amendment. To support his argument, he cites *Florida v. Jardines*, 569 U.S. 1 (2013).

[14] In *Jardines*, police received a tip that Jardines was growing marijuana in his home. Police took a drug-sniffing dog to the residence, and the dog alerted for the presence of marijuana while on Jardines' porch. Based thereon, police obtained a search warrant to search Jardines' house, where they found marijuana plants. The State charged Jardines with marijuana trafficking, and Jardines filed a motion to suppress the evidence against him, which the trial court granted. The State appealed all the way to the United States Supreme Court, which granted *certiorari* to answer "the question of whether the officers' behavior was a search within the meaning of the Fourth Amendment." *Id*. at 5.

[15] The Court first considered the limits of a person's right of privacy in his home and curtilage. At the Fourth Amendment's "'very core' stands the 'right of a

man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Id*. at 6 (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). The Court noted:

> This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.

*Id*. at 6. Curtilage is the area "immediately surrounding and associated with the home . . . [and is] part of the home itself for Fourth Amendment purposes." *Id*. (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)).

[16] Whether an officer's actions in the curtilage of a person's home amount to a Fourth Amendment search hinges on whether the officer's actions comply with an implicit or explicit license to enter from the residence's occupant. *Id*. at 7. The Court stated, regarding an implicit license to enter the curtilage of a person's home:

> We have accordingly recognized that "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds." This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. Thus, a police officer not armed with a warrant may

approach a home and knock, precisely because that is "no more than any private citizen might do."

*Id*. at 8 (internal citations omitted). However, the Court explained,

introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do that. An invitation to engage in canine forensic investigation assuredly does not inhere in the very act of hanging a knocker. To find a visitor knocking on the door is routine (even if sometimes unwelcome); to spot that same visitor exploring the front path with a metal detector, or marching his bloodhound into the garden before saying hello and asking permission, would inspire most of us to - well, call the police. The scope of a license—express or implied - is limited not only to a particular area but also to a specific purpose. Consent at a traffic stop to an officer's checking out an anonymous tip that there is a body in the trunk does not permit the officer to rummage through the trunk for narcotics. Here, the background social norms that invite a visitor to the front door do not invite him there to conduct a search.

*Id*. at 9. The *Jardines* Court determined the use of a drug-sniffing dog in the curtilage of a private residence constituted a search under the Fourth Amendment. *Id*. at 11-12.

[17] *Jardines* is distinguishable. In the case before us, Officer Shourds approached Taylor's front door to perform a knock and talk, which Officer Shourds described as "we were just going to go to Mr. Taylor's residence and speak with him. Tell him the allegations that had come in through dispatch and see if he would let us do a search of the property." (Tr. Vol. II at 28-9.) This activity is

akin to that described in *Jardines*, wherein the Court recognized an implicit license to enter the curtilage of a person's home, which "permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8. However, Officer Shourds' actions did not rise to the level intrusion found to violate the Fourth Amendment in *Jardines*.

[18] Instead, Officer Shourds did what a girl scout or a trick of treater who approached the door in the same manner would – briefly observe the activity inside the apartment clearly visible from the front door window. The record does not suggest he lingered or attempted to peer through a window not located on the door, actions we explicitly found to violate the Fourth Amendment in *J.K. v. State*, 8 N.E.3d 222, 232 (Ind. Ct. App. 2014). While the area of the curtilage is a protected area under the Fourth Amendment, Officer Shourds did no more than an ordinary citizen is implicitly licensed to do under *Jardines*. The fact that Officer Shourds had to reposition his body to view this activity is of no consequence – if Taylor had intended for all of the activity within the apartment to be private, he would have ensured no one could see inside when arriving at his front door.

[19] Finally, the activity observed by Officer Shourds that prompted the application for a search warrant – Stokes' possession of a device that could be used to smoke illegal drugs – was in open view. Items are observed in "open view" when "law enforcement officers see contraband from an area that is not constitutionally protected, but rather is in [sic] a place where the officer is

lawfully entitled to be." *Justice v. State*, 765 N.E.2d 161, 165 (Ind. Ct. App. 2002), *clarified on reh'g* 767 N.E.2d 995 (Ind. Ct. App. 2002). An officer's observations of items in open view "do not constitute a search in the constitutional sense." *Id*. Officer Shourds was in area he was permitted to be – outside Taylor's front door – engaged in legitimate police business – a knock and talk[13]- when he observed in open view what he believed to be criminal activity – Stokes' possession of drug paraphernalia. Because Taylor had not fully covered his window as to indicate he intended the activities therein to be private, the situation is no different from an officer observing an illegal item on the front porch of a residence. Officer Shourds' actions did not constitute a search and thus did not violate Taylor's rights under the Fourth Amendment to the United States Constitution. *See Trimble v. State*, 842 N.E.2d 798, 802 (Ind. 2006) ("The route which any visitor to a residence would use is not private in the Fourth Amendment sense, and thus if police take that route for the purpose of making a general inquiry or for some other legitimate reason, they are free to keep their eyes open.") (quoting 1 Wayne R. LaFave, Search and Seizure: A Treatise on The Fourth Amendment § 2.3(e), at 592-3 (4th ed. 2004)).

---

[13] *See Warren v. State*, 73 N.E.3d 203, 207 (Ind. Ct. App. 2017) (holding a "knock and talk" was legitimate police business and thus did not constitute a search under the Fourth Amendment).

# Article 1, Section 11

[20] The language of Article 1, Section 11, the search and seizure provision of the Bill of Rights of the Indiana Constitution, is virtually identical to its Fourth Amendment counterpart. Article 1, Section 11 provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Our Indiana Supreme Court has interpreted and applied Section 11 independently from federal Fourth Amendment jurisprudence. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

[21] To determine whether a search violates Article 1, Section 11 of the Indiana Constitution, we must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). "The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id*. at 360. In *Litchfield*, our Indiana Supreme Court outlined the evaluation we must undertake:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of:

> 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id*. at 361.

[22]     Here, the degree of suspicion and the extent of law enforcement needs were not low, as Officer Shourds had received two calls indicating there were people engaging in drug-related activity in Taylor's apartment. Additionally, Officer Shourds' actions were minimally intrusive, if at all, as he acted in the manner a public citizen might when approaching Taylor's front door for an innocuous reason such as to sell cookies or inquire regarding a political opinion. Based thereon, we cannot conclude Officer Shourds' activities were unreasonable, and therefore his observations did not constitute an impermissible search under Article I, Section 11 of the Indiana Constitution. *See Trimble v. State*, 842 N.E.2d 798, 804 (Ind. 2006) (search of curtilage permissible under Article 1, Section 11 based on concerned citizen's report, officer's minimal degree of intrusion, and officer's concern for health and safety of those involved), *adhered to on reh'g at Trimble v. State*, 848 N.E.2d 278 (Ind. 2006).

# Conclusion

[23]     Officer Shourds' act of peering through the inches-wide gap between the bottom of the blinds and the edge of the window on Taylor's front door apartment window did not constitute an impermissible search under the Fourth

Amendment or Article 1, Section 11 of the Indiana Constitution. Thus, the trial court did not abuse its discretion when it admitted the items found as part of the search warrant prompted, in part, by Officer Shourds' observations through the gap in the window. Accordingly, we affirm.

[24] Affirmed.

Baker, J., and Bailey, J., concur.